IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

PLANTATION SPINAL CARE CENTER,
INC., a Florida corporation, a/a/o Joseph
Laban, on behalf of itself and all others
similarly situated,

CLASS REPRESENTATION

   Plaintiff,

**CLASS ACTION COMPLAINT**

v.

DIRECT GENERAL INSURANCE COMPANY,

   Defendant.

             /

   Plaintiff, PLANTATION SPINAL CARE CENTER, INC., a/a/o Joseph Laban ("Plaintiff"

or "PLANTATION SPINAL"), on behalf of itself and all others similarly situated, brings this

Class Action against Defendant, DIRECT GENERAL INSURANCE COMPANY ("DIRECT

GENERAL" or "Defendant"), and alleges as follows:

### Jurisdiction, Parties, and Venue

   1.  This is an action asserting class action claims for declaratory relief, injunctive

relief, and compensatory damages relief pursuant to Federal Rules of Civil Procedure 23(a), (b)(2),

and/or (b)(3).

   2.  The Plaintiff, PLANTATION SPINAL, is a Florida corporation providing

chiropractic services with its principal place of business in Plantation, Broward County, Florida.

   3.  At all times material hereto, Joseph Laban was a patient at Plaintiff, PLANTATION

SPINAL, who is and/or was an insured under an automobile insurance policy providing personal

injury protection ("PIP") benefits issued by the Defendant, DIRECT GENERAL, and who

assigned his rights and benefits of said automobile insurance policy to Plaintiff, PLANTATION

SPINAL.

4.      DIRECT GENERAL is an Indiana corporation, doing business under the laws of the State of Florida, and at all material times, sold automobile insurance coverage subject to the "Florida Motor Vehicle No-Fault Law" or the "PIP Statute".

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the minimum jurisdictional requirements for this Court and because this is a class action in which Plaintiff, along with all of the members of the putative class, are citizens of Florida, a state different from the Defendant. Moreover, this is a class action for monetary, declaratory and injunctive relief the value of which in the aggregate exceeds $5,000,000 exclusive of all costs and attorney's fees, and the number of putative class members is at least one hundred (100).

6.      Venue for this action is proper in this Court because Defendant holds a certificate of authority to transact business in Florida, is registered to transact business in Florida, and is incorporated as a foreign corporation in Florida. Additionally, a substantial portion of the wrongdoing alleged in this Complaint took place in this District.

7.      Venue is proper in Broward County, Florida, because the Plaintiff is a resident of Broward County, Florida; the Defendant has offices throughout Florida including in Broward County, Florida; the Defendant transacts business in Broward County, Florida, and/or one or more of the causes of action set forth below arose and/or accrued in Broward County, Florida.

8.      All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

## NATURE OF THE ACTION

9.      This action seeks monetary, declaratory and injunctive relief based upon the Defendant's failure to pay the proper amount of reimbursements to the Plaintiff and the Class for

certain medical services provided to the Defendant's insureds.

10.     Specifically, Plaintiff, on behalf of itself and the Class, seeks the determination that the Defendant engaged in an improper uniform business practice of reducing by two percent (2%) its payments of all claims submitted by Plaintiff and the Class for medical services provided and billed under CPT codes 98940, 98941 and 98942, in violation of the Defendant's insurance policies and the Florida Motor Vehicle No-Fault Law.

## BACKGROUND INFORMATION

### Defendant's Insured

11.     On or about August 29, 2013, Joseph Laban ("Laban") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

12.     At all times material hereto, Laban was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by DIRECT GENERAL, with Policy number FLAD590035713, which policy was in full force and effect, and provided Personal Injury Protection ("PIP") benefits coverage as required by Florida law.

13.      As a result of the injuries sustained by Laban, Laban sought and received reasonable, related, and necessary medical services from PLANTATION SPINAL.

14.     On or about September 11, 2013, Laban executed an Assignment of Benefits assigning all of his benefits under the subject policy to PLANTATION SPINAL. The purpose of the assignment was to authorize PLANTATION SPINAL to bill DIRECT GENERAL directly for the medical services provided to Laban, and to require DIRECT GENERAL to pay PLANTATION SPINAL directly at its home office.  In other words, PLANTATION SPINAL stepped into Laban's shoes and became a party to the insurance contract.  *See* Assignment of

3

Benefits attached hereto as Exhibit "A".

15.     As the assignee of Laban's PIP benefits, PLANTATION SPINAL billed DIRECT GENERAL for medical services provided to Laban.

16.     Included in the treatment provided to Laban were services billed under CPT code 98941. The Plaintiff charged $75.00 for services attributed to CPT code 98941 eight (8) times. While the correct reimbursement rate for each unit of CPT code 98941 was $60.93, DIRECT GENERAL only paid Plaintiff $59.71 for each.

17.     For each of these payments the Defendant sent Plaintiff an Explanation of Benefits setting forth that payment had been made pursuant to the allowable rates prescribed at two hundred percent (200%) of the 2013 Medicare Part B Participating Physician Fee Schedule consistent with its insurance policy and Florida Statute Section 627.736. *See* Defendant's Explanation of Benefits attached hereto as Exhibit "B".

18.     Notwithstanding DIRECT GENERAL's representations in its Explanation of Benefits, the subject payments were improperly reduced payments in direct violation of DIRECT GENERAL's insurance policy and Florida Statute Section 627.736.

19.     DIRECT GENERAL has issued policies like the one issued to Laban providing PIP benefits coverage to thousands of other Florida residents and has consistently paid improperly reduced amounts to Plaintiff and Class members for claims submitted pursuant to CPT codes 98941.

## Florida Motor Vehicle No-Fault Law

20.     Since its adoption in 1972, Florida has operated under what is commonly known as a "no-fault" system for automobile liability pursuant to the "Florida Motor Vehicle No-Fault Law" in Chapter 627, Sections 627.730 through 627.7405 of the Florida Statutes.

4

21.     Under the Florida Motor Vehicle No-Fault Law, automobile operators are required to secure automobile insurance including PIP benefits coverage that provides a minimum of $10,000 in combined medical expense and lost wage coverage payable to the insured if the insured is involved in an automobile accident and suffers covered losses, regardless of fault. *See, e.g.,* Fla. Stat. § 627.736(1)(a).

22.     In 2007, the Florida Legislature adopted a permissive fee schedule which permitted insurance carriers to utilize the Medicare Part B Participating Provider fee schedule as a per se determination of the "reasonable" amount for medical services.  Florida Statute Section 627.736 sets forth various fee schedules but the one applicable for the services material to this action is the Medicare Part B Participating Fee Schedule, which is the formula to be used pursuant to 42 U.S.C. § 1395w(b)(1).

23.     Defendant, at all times material, has elected to adopt the fee schedule permitted by Section 627.736, Florida Statutes, into its policies, and has asserted that it provided adequate notice of the election to use the actual fee schedule.[1]

24.     The Florida PIP Statute was amended in 2014 to incorporate the fee schedule for the payment of claims as follows:

**(5) Charges for treatment of injured persons.**

(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal

---

[1] The applicable fee schedule under Medicare is the fee schedule in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.  For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

1. *The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:*

   f. *For all other medical services, supplies, and care, 200 percent of the allowable amount under:*

      (I) *The participating physicians fee schedule of Medicare Part B,* except as provided in sub-sub-subparagraphs (II) and (III).

25.     Pursuant to Florida law an insurance company cannot provide lesser coverage than as required under the statute, but can provide greater coverage.

26.     Notwithstanding the foregoing statutory language, Defendant, as a general business practice, has reduced by two percent (2%) its payments for the amounts billed by Plaintiff and all Class members for claims submitted for medical services billed under CPT codes 98941, which reduced payments are less than the amounts payable per the fee schedule elected by the Defendant as set forth in its policy and in violation of Florida Statute Section 627.736.

## DEFENDANT'S IMPROPER TWO PERCENT (2%) REDUCTION TO CLAIMS SUBMITTED UNDER CPT CODES 98940 and 98941

27.     On November 25, 2009, the Department of Health and Human Services ("HHS"), the supervising branch of the Center for Medicare & Medicaid Services ("CMS"), published its annual Final Rule in the Federal Register including enactments applicable to calendar years 2010 through 2014.  In its 2010 Medicare Physician Fee Schedule Final Rule, HHS discussed a demonstration it had conducted (the Chiropractic User Analysis) pursuant to the Medicare Prescription Drug, Improvement and Modernization Act of 2003 (hereinafter "MMA"). The MMA required HHS to conduct a two (2) year demonstration to "evaluate the feasibility and advisability of expanding coverage for chiropractic services under Medicare." *See* 74 Federal Register 61926-61928.

28.     The mandated demonstration was conducted by Brandeis University at a total cost of $114 million, $50 million of which was apportioned to CMS.  The MMA required that the demonstration be "budget neutral", meaning the applicable cost to CMS was to be recouped by a reduction to reimbursements for chiropractic services for future calendar years. *Id.* at 61927.

29.     The CMS Office of the Actuary ("OACT") established a plan to recoup the outstanding $50 million apportioned to CMS by reducing the payment for chiropractic fee codes 98940, 98941 and 98942 by two percent (2%) commencing in calendar year 2010 through calendar year 2014.  OACT estimated that CMS would recoup $10 million per year from 2010 through 2014 **by reducing CMS' payment of Medicare claims.** *Id.*

30.     HHS stated that the two percent (2%) reduction was only to be applied to Medicare claims. HHS specifically stated:

> Consistent with the proposed rule, for this final rule with comment period, we are reflecting this reduction ***only in the payment files used by the Medicare contractors to process Medicare claims rather than through adjusting the RVUs. Avoiding an adjustment to the RVUs would preserve the integrity***

> *of the PFS, particularly since many private payers also base payment on the RVUs.* The RVUs published in Addendum B and posted on our Website will not show this reduction but will be annotated to state that the reduction resulting from the chiropractic demonstration is not reflected in the RVUs.

*Id* .at 61927 (emphasis added).

31.     HHS purposely refrained from amending the Relative Value Units (hereinafter "RVU") used to calculate the appropriate fee schedule price so that *private payers* would not apply the two percent (2%) reduction. The Medicare Physician Fee Schedule ("PFS") as authored by CMS does NOT include the two percent (2%) reduction for CPT codes 98940, 98941 or 98942. Those reductions were only reflected in the payment files distributed to Medicare contractors.

32.     The PFS Final Rule authored by HHS for each calendar year from 2010 through 2014 reflected in the Federal Register explicitly reasserts the calendar year 2010 PFS policy **establishing the reductions for Medicare claims only**. *See* 78 Federal Register 74790 – 74791.

33.     While it was proper for Medicare contractors to apply the two percent (2%) reduction to Medicare claims submitted to them for CPT codes 98940, 98941, and 98942, Defendant has improperly reduced by two percent (2%) the payment of claims submitted by Plaintiff and Class members for medical services provided under those same CPT codes as if they were Medicare claims.

34.     Based upon the restrictive language and clear intent of HHS in the Federal Register to limit the applicability of the two percent (2%) reduction to Medicare contractors adjusting Medicare claims, Defendant has violated Florida Statute Section 627.736 and its own insurance policies by improperly applying the two percent (2%) reduction for claims submitted by Plaintiff and Class members under CPT codes 98940 and 98941.

35.     Fla. Stat. § 627.736(5)(a)(l)-(3) (2014) states, in part:

1. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
a. For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.
b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.
c. For emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
f. **For all other medical services, supplies, and care, 200 percent of the allowable amount under:**
(I) **The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).**
(II) Medicare Part B, in the case of services, supplies, and care provided by
ambulatory surgical centers and clinical laboratories.
(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee
schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided . Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

2. For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

9

3. Subparagraph 1. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 1. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider is entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes. However, subparagraph 1. does not prohibit an insurer from using the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit.

(Emphasis added)

36.    The PIP statute clearly allows an insurer to limit reimbursement of medical services, supplies, and care to eighty percent (80%) of two hundred percent (200%) of the *allowable amount* under the *participating physician's fee schedule* of Medicare Part B.  Instead of following the statutory language of the PIP statute, Defendant has systematically and improperly been paying eighty percent (80%) of two hundred percent (200%) *of ninety eight percent (98%)* of the allowable amount under the participating physician's fees schedule of Medicare Part B.

37.    The sole purpose of the two percent (2%) reduction applied by CMS for Medicare claims for those three (3) CPT codes for calendar years 2010 through 2014 was to recoup the cost incurred by CMS for the Brandeis University demonstration, not to benefit private payers like the Defendant.

38.    The original PFS reimbursement rate for any service for any time period for any locality in the country is calculated from the original RVU's, Geographic Practice Cost Index ("GPCI"), and Conversion Factor ("CF") for any given year.  These values are published in the

annual PFS Final Rule.[2]

39.     The original calendar year RVU, GPCI and CF value tables for services rendered are published on the CMS website and are accessible by performing a simple Google search. *See* CMS.gov. Therefore, Defendant as a private payer must pay the original PFS reimbursement rate without any additional reductions to CPT codes 98940 and 98941. Defendant's application of the two percent (2%) reduction to its payments of claims submitted under these CPT codes is improper and amounts to nothing other than a violation of the PIP Statute and of Defendant's own insurance policies.

40.     The terms of Defendant's insurance policies and the PIP Statute equally apply to Defendant's insureds and assignees of its policies, including Plaintiff and Class members.

41.     Plaintiff, on behalf of itself and all others similarly situated, alleges that Defendant uniformly and systematically improperly applied the two percent (2%) reduction to the payments of all claims submitted by Plaintiff and Class members for medical services rendered pursuant to CPT codes 98940 and 98941.

42.     The common injury that Defendant caused Plaintiff and Class members stems from Defendant's misinterpretation of PFS Final Rule and improper application of the two percent (2%) reduction which was only available to Medicare contractors, not private payers.

## CLASS ACTION ALLEGATIONS

43.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), Plaintiff, together with such other Class members that may join this action as class representatives, hereby bring Counts I, II, and III of this action on their own behalf and on behalf of all those similarly situated who were

---

[2] *See*, 62 Federal Register 59050 – 59051 (1997) establishing "[t]he general formula for calculating the Medicare fee schedule amount for a given fee schedule area can be expressed as: Payment = [(RVU work × GPCI work) + (RVU PE × GPCI PE) + (RVU MP × GPCI MP)] × CF".

underpaid by the Defendant based, in whole or in part, on its unlawful interpretation and/or application of the Medicare Part B Participating Provider Fee Schedule.

44.     As used herein, the Class Period is October 10, 2012 through the present and the Class consists of and is defined as follows:

> All Florida healthcare providers who (a) are/were the assigns or assignees of covered insureds under an automobile insurance policy issued by DIRECT GENERAL as described in Fla. Stat. § 627.736(1)(a); and (b) who at any time during the Class Period submitted bills to DIRECT GENERAL for payment of PIP benefits for medical services billed under CPT codes 98940 and/or 98941; and (c) DIRECT GENERAL reduced the reimbursement of such medical services by two percent (2%).

> Excluded from the Class are persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court; the Defendant; any subsidiary or affiliate of the Defendant; the directors, officers and employees of the Defendant or its subsidiaries or affiliates; any entity in which any excluded person has a controlling interest; the legal representatives, heirs, successors and assigns of any excluded person; and member of the federal judiciary including the judge assigned to this case along with any persons within the third degree of consanguinity to such judge.

45.     Plaintiff and Class members reserve the right to amend the Class definition as discovery proceeds and to conform to the evidence.

46.     Numerosity (Rule 23(a)(1)).     While the exact number of Class members is unknown at this time, Plaintiff alleges that there are thousands of Florida residents who are/were insured through policies issued by Defendant who assigned their benefits to Florida healthcare providers during the Class Period.  Moreover, Plaintiff alleges that thousands of Florida healthcare providers who submitted claims to Defendant for medical services provided and billed under CPT codes 98940 and 98941, and that DIRECT GENERAL has had a general business practice of reducing by two percent (2%) the payment of claims submitted under CPT codes 98940 and 98941. As a result, the number of Class members is so numerous that separate joinder of each member is impracticable.

47. The Class members will be easily discovered through DIRECT GENERAL's records which will disclose all claims information related to CPT codes 98940 and 98941 including each Class member and claim for which DIRECT GENERAL improperly reduced the payment. This data will enable the Plaintiff to easily determine common action and liability as well as damages for all putative Class members' claims.

48. Commonality (Rule 23(a)(2)).   This action poses questions of law and fact that are common to and affect the rights of all Class members.  Such questions of law and fact common to the Class include the following:

   a. Whether DIRECT GENERAL has been improperly reducing by two percent (2%) the payment of claims submitted under CPT codes 98940 and 98941;

   b. Whether DIRECT GENERAL breached its insurance policy(ies);

   c. Whether DIRECT GENERAL has improperly interpreted and/or applied the Medicare Part B Participating Physicians Fee Schedule;

   d. Whether the Plaintiff and the Class are entitled to declaratory relief to determine the parties' respective rights and obligations concerning the provisions of DIRECT GENERAL's policies that contain an election to pay claims pursuant to the Medicare Part B Physicians Fee Schedule and any similar policy language;

   e. Whether the Plaintiff and the Class are entitled to injunctive relief to require DIRECT GENERAL to cease and desist from continuing to violate Florida Statute Section 627.736 and its own insurance policies;

   f. Whether the Plaintiff and the Class are entitled to compensatory relief for the amount of medical benefit claims DIRECT GENERAL failed to pay in violation of Florida Statute Section 627.736 and its own insurance policies, plus prejudgment interest;

   g. Whether the Plaintiff and the Class are entitled to information notice to inform them that DIRECT GENERAL has not properly paid claims that were submitted under CPT codes 98940 and 98941.

49. Typicality (Rule 23(a)(3)).  Based upon the facts and legal claims or questions of

law set forth herein, Plaintiff's claims are typical of the claims of the Class in that, in proving its claims, Plaintiff will simultaneously prove the claims of all Class members.  There is a sufficient relationship between the injuries suffered by Plaintiff and the Class as a result of Defendant's conduct, and Plaintiff has no interest adverse to the interests of other Class members.  Plaintiff and each Class member is a health care provider who is an assignee of Defendant's standardized automobile insurance policy, whose claims submitted pursuant to Defendant's PIP policy benefits have been underpaid based solely on the Defendant's improper reduction of their payments in violation of Florida Statute Section 627.736 and its own insurance policy.

50.    Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individual plaintiffs will likewise have issues that are common to those of all other Class members.

51.    Adequacy (Rule 23(a)(4)). The Plaintiff is a health care provider doing business in Florida that has no conflicts of interest and will fairly and adequately represent and protect the interests of the Class.  Plaintiff is aware of its responsibility as a Class Representative and has retained undersigned counsel who are competent and have more than twenty (20) years of experience prosecuting Class actions.  As a result, the undersigned attorneys are qualified and experienced in Class action litigation and will adequately protect the interests of the Class.

52.    Superiority.  A Class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      A. Absent a Class, the Class members will continue to suffer damages and DIRECT GENERAL's unlawful conduct will continue without remedy;

      B. Given the size of individual Class members' claims, few, if any, Class members could afford to or would seek legal redress individually for the

wrongs DIRECT GENERAL has committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

C.  When the liability of DIRECT GENERAL has been adjudicated, claims of all Class members can be administered efficiently and/or determined uniformly by the Court; and

D.  The action presents no difficulty that would impede its management by the Court as a Class action which is the best available means by which Plaintiff and Class members can seek redress for the harm caused to them by DIRECT GENERAL.

53.     Rule 23(b)(2).   Under Counts I and II below, Plaintiff brings this Class action pursuant to Fed. R. Civ. P. 23(b)(2) on the grounds that DIRECT GENERAL's actions or omissions as alleged herein, are generally applicable to all Class members thereby making declaratory relief concerning the Class as a whole particularly appropriate.  DIRECT GENERAL systematically and routinely improperly interpreted and/or applied its policies and Florida Statute Section 627.736, adversely affecting Plaintiff and each Class member.

54.     Because Plaintiff seeks declaratory relief for Class members under Rule 23(b)(2), the prosecution of separate declaratory actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the DIRECT GENERAL.  Further, adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

55.     Rule 23 (b)(3).   With respect to Count III below, Plaintiff brings this Class action pursuant to Fed. R. Civ. P. 23(b)(3) on the grounds that DIRECT GENERAL's actions in violation of Florida Statute Section 627.736 and its own insurance policies because of its failure to pay the full amount due for claims submitted under CPT codes 98940 and 98941, make DIRECT

GENERAL liable to Plaintiff and all Class members for their unpaid benefits.

## COUNT I
## CLASS ACTION FOR DECLARATORY JUDGMENT

56.     Plaintiff and the Class repeat and reallege each and every allegation contained in

paragraphs 1 through 55 above as if the same were fully alleged herein.

57.     Pursuant to the provisions of 28 U.S.C. § 2201, this case involves an actual

controversy within the jurisdiction of this Court and Plaintiff and Class members ask the Court to

declare the rights of the Plaintiff and Class members.

58.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

        DEMAND LETTER.-

            (a)  As a condition precedent to filing any action for benefits under
        this section, the insurer must be provided with written notice of an intent to
        initiate litigation. Such notice may not be sent until the claim is overdue,
        including any additional time the insurer has to pay the claim pursuant to
        paragraph (4)(b).

(Emphasis added).   Because Count I only seeks declaratory relief, it is not an "action for benefits"

pursuant to § 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of

this action.

59.     Plaintiff and all Class members have submitted claims for PIP benefits to DIRECT

GENERAL for payment under DIRECT GENERAL's standardized automobile insurance policy.

60.     DIRECT GENERAL's policy contains language that elects the use of the fee

schedules permitted in Florida PIP Law.

61.     Plaintiff alleges that the correct interpretation of the policy language and the PIP

Statute is that DIRECT GENERAL is required to pay eighty percent (80%) of two hundred percent

(200%) of the allowable amount under the Medicare Part B Participating Physicians Fee Schedule

16

without any additional reduction for claims submitted under CPT codes 98940 and 98941.

62. Despite the plain language of the PIP Statute, the Defendant has continuously and systematically violated the PIP Statute by improperly reducing by two percent (2%) payments for all claims submitted by Plaintiff and Class members under CPT codes 98940 and 98941.

63. Defendant entered into valid insurance policies with its insureds whose benefits were properly assigned to Plaintiff and Class members. Defendant's insurance policies were written by the Defendant, and provided PIP benefits including an election to pay claims pursuant to the Medicare Part B Participating Physicians Fee Schedule.

64. Despite the plain language of Defendant's insurance policies, the Defendant has continuously and systematically violated its own insurance policies by improperly reducing by two percent (2%) payments for all claims submitted by Plaintiff and Class members under CPT codes 98940 and 98941.

65. During the Class Period, Plaintiff and Class members submitted claims for payment of PIP benefits including claims submitted under CPT codes 98940 and 98941 and their PIP benefits were unlawfully reduced by Defendant.

66. Plaintiff and Class members allege that based upon the plain language of the PIP Statute, the Defendant was not lawfully authorized to reduce the payment of claims submitted under CPT codes 98940 and 98941. Despite the express and unambiguous terms of the PIP Statute, the Defendant continuously and systematically reduces the payment of claims submitted by Plaintiff and Class members for medical services performed under CPT codes 98940 and 98941.

67. Accordingly, Plaintiff and Class members are in doubt about their rights, and a bona fide present controversy exists between the Plaintiff and Class members, and the Defendant concerning the proper interpretation and/or application of the PIP Statute and the language of

17

Defendant's insurance policy, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to whether, during the Class Period, the Defendant has been lawfully authorized to reduce by two percent (2%) its payment of Plaintiff and Class members claims submitted under CPT codes 98940 and 98941.

68.     The rights, status, or other equitable or legal relations of the parties are affected by Fla. Stat. § 627.736.  Accordingly, pursuant to 28 U.S.C. § 2201, the Plaintiff and Class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

69.     Plaintiff and Class members allege the foregoing claim for declaratory relief pursuant to Fed. R. Civ. P. 8(d)(3).

70.     The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Fla. Stat. §  627.428.

**COUNT II**
**CLASS ACTION FOR INJUNCTIVE RELIEF**

71.     Plaintiff and the Class repeat and reallege each and every allegation contained in paragraphs 1 through 55 above as if the same were fully alleged herein.

72.     This is a class action for injunctive relief brought by the Plaintiff and the Class against the Defendant.

73.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

DEMAND LETTER.-

(a) As a condition precedent to filing any action for benefits under this section, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emphasis added).

74.     Because Count II only seeks injunctive relief, it is not an "action for benefits"

18

pursuant Florida Statute Section 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of this action.

75.     Defendant has violated Fla. Stat. § 627.736 as set forth above and, as a result, has violated the cognizable legal rights of the Plaintiff and Class members pursuant to the Defendant's insurance policies and the PIP Statute.

76.     Defendant continues to retain monies due and owing to Plaintiff and Class members for medical services provided by Plaintiff and Class members which should have been paid by Defendant from its insureds' PIP benefits.

77.     The Plaintiff and Class members will suffer irreparable injury if the Defendant is permitted to continue its violation of Florida Statute Section 627.736 as a basis to unlawfully reduce its payments for valid bills for medical services provided to the Defendant's PIP insureds. Examples of such irreparable injury include but are not limited to the following:

(a) Absent injunctive relief requiring the Defendant to cease and desist from its continuing wrongful conduct, the Plaintiff and Class members are left in the untenable position of having to address the Defendant's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

(b) The PIP statute allows Defendant to pay eighty percent (80%) of two hundred percent (200%) of the Medicare Part B Participating Physicians Fee Schedule for all claims including those submitted under CPT codes 98940 and 98941, and Defendant should not be permitted to reduce payment by two percent (2%) of claims submitted under CPT codes 98940 and 98941.

(c) The Defendant's continuing and ongoing unlawful conduct places its own PIP insureds at risk that health care providers will refuse to treat them without receiving full payment in advance of receiving health care services needed to properly treat and/or diagnose their health condition, and this will lead to incalculable or unascertainable losses to third parties.

78.     The Plaintiff and Class members have a clear legal right to seek an injunction requiring that the Defendant cease and desist from continuing to violate Fla. Stat. § 627.736 by

unlawfully reducing payment of valid bills for medical services provided to the Defendant's PIP insureds.

79.     The language of the PIP Statute is clear and unambiguous and, as a result, Plaintiff's and Class members' claim is meritorious and has a substantial likelihood of success. Despite the plain and statutory language, Defendant has violated and continues to violate the PIP Statute to the detriment of the Plaintiff and Class members.

80.     The Plaintiff and the Class members have no other adequate remedy at law by virtue of the Defendant's course of conduct.

81.     Irreparable injury will be suffered unless a permanent injunction is issued to prevent the Defendant from continuing to unlawfully limit Plaintiff and the Class members PIP benefits under their insurance policies with the Defendant in direct violation of Fla. Stat. § 627.736.

82.     Any potential injury to Defendant attributable to an injunction providing that it must follow the clear and unambiguous language of Fla. Stat. § 627.736 is outweighed by the injury that Plaintiff, Class members and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

83.     Plaintiff and Class members allege the foregoing claim for injunctive relief pursuant to Fed. R. Civ. P. 8(d)(3).

84.     The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to § 627.428, Florida Statutes.

**COUNT III**
**CLASS ACTION FOR BREACH OF CONTRACT**
**(UNPAID PIP BENEFITS)**

85.     Plaintiff and the Class repeat and reallege each and every allegation contained in

paragraphs 1 through 55 above as if fully alleged herein.

86.     Plaintiff and Class members allege a breach of contract claim against the Defendant

for unpaid PIP benefits in violation of Fla. Stat. § 627.736 and Defendant's own insurance policies.

87.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

DEMAND LETTER.-

(a) As a condition precedent to filing any action for benefits under this section, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).
(Emphasis added).

88.     The Plaintiff and the Class members satisfied the pre-suit requirements of Fla. Stat.

§ 627.736(10) because Plaintiff and the Class members sent Defendant pre-suit demand letters

prior to instituting this action.

89.     Despite receiving the Plaintiff and Class members' demand letters, Defendant

failed to timely pay the appropriate amount of PIP benefits required by § 627.736.

90.     As a result of Defendant's failure to timely pay the appropriate amount of PIP

benefits, Defendant violated Fla. Stat. § 627.736 and breached the Plaintiff's and Class members'

PIP insurance policies.

91.     As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff and

Class members have suffered damages.

92.     Plaintiff and Class hereby demand that the amount of benefits necessary to satisfy

their claims be placed in escrow during the pendency of this litigation in order to insure that such

benefits are not exhausted.

93.     The Plaintiff has retained the undersigned counsel to prosecute this action and is

entitled to the recovery of its reasonable attorneys' fees and costs pursuant to § 627.428, Florida

Statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, pursuant to Chapter 86, Florida Statutes, and 28 U.S.C. § 2201 hereby respectfully requests this Honorable Court to award the following relief against the Defendant:

(a) Issue an Order certifying that Counts I, II, and III are properly maintainable as a Class action under Fed. R. Civ. P. 23(b)(l), (2), and/or (3) and appointing the Plaintiff to represent the Class defined herein, and appointing the undersigned law firms as Class Counsel;

(b) Issue an Order granting a declaratory judgment under Count I, declaring the parties' respective rights and obligations under Fla. Stat. § 627.736 and the Defendant's PIP insurance policies;

(c) Issue an Order granting a temporary and/or permanent injunction under Count II, requiring the Defendant to cease and desist from continuing to utilize and rely upon an unlawful application of the two percent (2%) reduction in the payment of claims submitted under CPT codes 98940 and 98941 in violation of the PIP Statute and Defendant's insurance policies;

(d) Issue an Order awarding Plaintiff and the Class damages representing full payment of their PIP benefits as required under § 627.736, including prejudgment interest and interest on all benefits that were not timely paid;

(e) Issue an Order requiring the Defendant to pay the Plaintiff and the Class their reasonable attorneys' fees and costs pursuant to Florida Statutes §§ 627.428 and/or § 627.736(8);

22

(f) Issue an Order requiring Defendant provide notice to all Class members regarding the rulings, findings, and declarations in this action and their legal rights with respect to DIRECT GENERAL's improper reduction of their PIP benefits and violation of their policy and the PIP Statute; and

grant such other relief as this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, requests trial by jury on all issues so triable.

Dated: October 10, 2017                    Respectfully submitted,

/s/ *Tod Aronovitz*
Tod Aronovitz (FBN 186430)
ta@aronovitzlaw.com
Barbara Perez (FBN 989304)
bp@aronovitzlaw.com
**ARONOVITZ LAW**
2 South Biscayne Boulevard
One Biscayne Tower, Suite 3700
Miami, FL 33131
Tel: 305-372-2772
Fax: 305-397-1886

Theophilos Poulopoulos (FBN 98070)
theo@injuredinflorida.com
**SCHILLER, KESSLER & GOMEZ, PLC**
7501 W. Oakland Park Boulevard
Suite 201
Ft. Lauderdale, FL 33319
Tel: 954-933-3000
Fax: 954-667-5805